(Not for publication)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| EDWIN YUST, | : |
| Plaintiff, | : Civil No. 02-3117 (RBK) |
| v. | : **OPINION** |
| CITY OF OCEAN CITY, et al., | : |
| Defendants. | : |

**KUGLER**, United States District Judge:

This matter comes before the Court on a motion by City of Ocean City, Mayor Henry Knight, and Dominick Longo (collectively "Defendants") for partial summary judgment against Edwin Yust. Yust alleges that during his employment with Ocean City Beach Patrol ("OCBP"). Defendants retaliated against him in violation of 42 U.S.C. § 1983 and § 1985, the New Jersey Conscientious Employee Protection Act ("CEPA"), N.J. Stat. Ann. 34:19-1, and the New Jersey Constitution. For the reasons set forth below, the Court will grant Defendants' motion.

**I.   BACKGROUND**

Yust has been a long-time seasonal employee of OCBP. Between 1997 and 2002, he suffered a series of adverse employment actions. He alleges that these actions were in retaliation for votes he cast as a member of the Lifeguard Pension Commission ("the Commission") and for supporting a colleague's recommendation to extend lifeguard hours at Ocean City's beaches.

1

Knight was mayor of Ocean City during the relevant period, and Longo was his Director of Public Safety.

In addition to working for OCBP, Yust served on the Commission, which oversees the Ocean City Lifeguard Pension Plan. In late 1997, an OCBP medic named Kathy Bourbeau submitted a request to the Commission, asking that it waive a particular requirement of the Family Medical Leave Act. On December 4, 1997, the Commission voted to deny the waiver. On February 12, 1998, the Commission met and discussed the waiver again. Then on March 26, 1998, the Commission agreed to reconsider Bourbeau's waiver request at a subsequent meeting. On April 23, 1998, the Commission unanimously voted to again deny the waiver. Following this second vote, on June 16, 1998, Mayor Knight, who was not a member of the Commission, informed the members that he "had a problem with" the decision to deny Bourbeau's waiver request and that he was disappointed the Commission had not followed the advice of the City Solicitor, who had told the Commission it could grant the waiver. (Defs.' Mot. Summ. J. Ex. 14.) Longo also supported approving the waiver. (Id. Ex. 11.) Then, on December 9, 1998, the Commission held another vote, which came out two to two, still not the majority needed for approval.

The next day, Longo notified Yust that as part of Mayor Knight's plan to streamline and modernize public services in Ocean City, the position of Assistant Captain, which Yust had held for nearly ten years, was going to be eliminated. In response to this demotion, Yust filed a grievance pursuant to his collective bargaining agreement. Ultimately, Yust filed an unfair practice charge with the New Jersey Public Employee Relations Commission ("PERC")

challenging his demotion June 4, 1999.[1]

On April 15, 1999, Longo advertised two openings for the position of Senior Lieutenant with the OCBP. Yust was among four OCBP employees who applied, but on May 7, two other candidates, whom Yust asserts were less experienced than he, were awarded the positions. Yust did not grieve the denial of the Senior Lieutenant positions. Longo instead made Yust a roving Lieutenant, instead of a Lieutenant assigned to a zone. Also, during the summer of 1999, Yust alleges that he was the only OCBP administrator who did not receive keys to the lifeguard stations or to the boatshop, when even some nonadministrative lifeguards had keys. Yust alleges that he requested keys several times from Assistant Captain McKinley, who promised they would be forthcoming; however Yust never received them. Moreover, every year since Yust had become an administrator with OCBP he had gotten a parking permit, but in summer 1999, that too was denied him. He testified that Longo told him he did not need one.

During the July 4 holiday that year, two drownings occurred in Ocean City while the lifeguards were off-duty. In response, OCBP Captain Oliver Muzslay—whose position was superior to Yust's but inferior to Longo's—suggested to Longo that he extend lifeguard hours. Longo's position was that Ocean City lacked the funds necessary to implement such a plan. Yust supported Muzslay's idea and expressed that support to several other OCBP employees, including an Assistant Captain. Later that summer, on August 12, 1999, the Commission voted for a third time on Bourbeau's waiver request, finally gaining the necessary majority for approval. Yust was the only member to vote against the waiver in the final vote.

During the summer of 2000, Longo again made Yust a roving Lieutenant. Yust filed a

---

[1] As of the date Defendants filed their motion, Yust's PERC matter was still pending.

grievance about this assignment on June 29, 2000, complaining that he was the most senior Lieutenant on the Beach Patrol and that several of the Lieutenants assigned to zones had far less experience than he. He testified that he should have been made Senior Lieutenant that summer. Also, for the preceding sixteen summers, Yust had always started his OCBP job on Memorial Day weekend; however, in the summer of 2000, the OCBP delayed his start date until on or about June 18. Yust stated that when he inquired about the change, he was informed that Longo had ordered it. In the two succeeding summers, Yust was again passed over for promotions, in 2001, for Chief of Operations and in 2002, for Senior Lieutenant.

Yust filed his federal complaint on June 28, 2002. On February 17, 2004, pursuant to Yust's request, his case was administratively terminated. At that time, he was undergoing treatment for large cell lymphoma, and he did not want to have to proceed with discovery during that period. On August 22, 2007, the case was reopened despite Defendants' opposition. Defendants then filed their motion for summary judgment on September 20, 2007. Yust did not respond to that motion.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could find for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When the Court weighs the evidence presented by the parties, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. Celotex, 477 U.S. at 330. The moving party may satisfy this burden by either (1) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (2) demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case. Id. at 331.

Once the moving party satisfies this initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

Because Yust's motion for summary judgment is unopposed, this Court will "treat all facts properly supported by the movant to be uncontroverted." Brandon v. Warden, No. State Prison, 2006 WL 1128721, *3 (D.N.J. Apr. 27, 2006) (citations omitted). Here, the moving party is also the party bearing the burden of proof, so the Court must determine "that the facts specified in or in connection with the motion entitle the moving party to judgment as a matter of law." Anchorage Assoc. v. Virgin Islands Bd. of Tax Rev., 922 F.2d 168, 176 (3d Cir. 1990).

## III.   DISCUSSION

Yust alleges that his treatment by Longo and Mayor Knight between 1998 and 2002[2] violated his rights as guaranteed by the First and Fourteenth Amendments of the United States Constitution and by Article I paragraph 1 of the New Jersey Constitution.  Yust alleges further that the conduct constituted retaliation under CEPA.  In addition, Yust alleges that Longo conspired with Mayor Knight to violate Yust's civil rights in contravention of 42 U.S.C. § 1985.  Defendants seek partial summary judgment on these claims.  Defendants seek summary judgment on Yust's § 1983 claims, New Jersey constitutional claim, § 1985 claim, and on all claims against the City of Ocean City.[3]

### A.   Statute of Limitations

Defendants argue that any of Yust's § 1983 claims that accrued before June 28, 2000 are barred by the statute of limitations.  Actions brought under § 1983 are subject to statute of limitations applicable to personal injury in state in which claim accrued.  Cito v. Bridgewater Twp. Police Dep't, 892 F.2d 23, 25 (3d Cir. 1989).  That statute of limitations in New Jersey is "within 2 years next after the cause of any such action shall have accrued."  N.J. Stat. Ann. 2A:14-2.  The continuing violations theory, however, provides an exception to the statute of limitations for a plaintiff who can demonstrate that the alleged discriminatory action that is time-

---

[2]  In their brief in support of their motion for summary judgment, Defendants discuss Longo's removal of payroll duties from Yust's Assistant Captain position in 1997.  Those duties were restored to Yust following a grievance procedure.  The Court does not construe Yust's complaint to include allegations related to this incident, and thus the Court does not address it.

[3]  The Court will not separately address the issue of municipal liability, because the Court finds no liability on the part of Longo or Mayor Knight for which Ocean City's could be responsible.

barred is part of an ongoing practice or pattern of discrimination by the defendant. West v. Phila. Elec. Co., 45 F.3d 744, 754 (3d Cir. 1995).

Nevertheless, the continuing violations theory does not apply to certain types of discrimination claims. New Jersey state and federal courts have consistently found that the theory does not apply to a discrimination claim based on lost promotions for specific positions. See, e.g., Rush v. Scott Specialty Gases, Inc., 113 F.3d 476, 483-84 (3d Cir. 1997) (stating that plaintiff's failure to promote claim "addresses discrete instances of alleged discrimination that are not susceptible to a continuing violations analysis"); Harel v. Rutgers, 5 F. Supp. 2d 246, 262 (D.N.J. 1998) (noting that two distinct decisions against promotion are discrete acts not subject to continuing violations doctrine), aff'd 191 F.3d 444 (3d Cir. 1999); Bolinger v. Bell Atl., 749 A.2d 857, 861-62 (N.J. Super. Ct. App. Div. 2000) (finding that discrete acts like termination or denial of a promotion trigger an employee's duty to take legal action to recoup rights). But see Miller v. Beneficial Mgmt. Corp., 977 F.2d 835, 844 (3d Cir. 1992) (allowing for application of the continuing violations theory for repeated failures to promote where potential for promotion was not based on specific job vacancies). Nor are First Amendment retaliation claims subject to the continuing violations doctrine, because a retaliatory act that infringes on a plaintiff's First Amendment rights is considered a discrete act. See O'Connor v. City of Newark, 440 F.3d 125, 127-28 (3d Cir. 2006) (reasoning that First Amendment retaliation claims are not susceptible to continuing violations theory because they "always individually actionable, even when relatively minor"); Myers v. County of Somerset, 515 F. Supp. 2d 492, 501 n.1 (D.N.J. 2007) ("A retaliatory act that infringes upon a plaintiff's First Amendment rights is a discrete act").

As a result, the continuing violations theory will not save several of Yust's untimely

claims. Any due process or First Amendment retaliation claims derived from Longo's failure to promote Yust in 1999 will be dismissed, because those claims accrued on May 27, 1999, the date of the adverse action. Similarly, any First Amendment retaliation claim Yust asserts relating to Longo keeping Yust from having keys and a parking permit in 1999 is out of time. Finally, any claims stemming from Yust's 1998 demotion are also untimely, because that too was a discrete adverse action. Indeed, Yust recognized the need to assert his rights in the wake of that demotion by filing a PERC on June 4, 1999. Therefore, Defendants merit summary judgment on all of Yust's § 1983 claims to the extent he relies on events that took place prior to June 28, 2000. Yust's remaining claims rest on his delayed start date in 2000 and the four promotions he was denied during the summers of 2000[4], 2001, and 2002. The Court will next address the merits of these remaining claims.

    **B.    First Amendment Retaliation**

To prevail on a First Amendment retaliation claim, a plaintiff must show first, that the activity in question is protected by the First Amendment, and second, that the protected activity was a substantial factor in the alleged retaliatory action. Hill v. Borough of Kutztown, 455 F.3d 225, 241 (3d Cir. 2006). The first factor is a question of law; the second factor is a question of fact. Id. When a plaintiff is a public employee, his communication is only protected by the First Amendment when "(1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have 'an adequate justification for treating the employee differently from any other member of the general public'

---

[4] The record does not reveal the precise dates on which Yust was denied promotions during the summer of 2000. Thus, the Court will assume for purposes of this motion, that they occurred after June 28 of that year and are therefore timely.

as a result of the statement he made." Id. at 241-42 (quoting Garcetti v. Ceballos, 547 U.S. 410, 418 (2006)). When a public employee makes a statement pursuant to his official duties, he is not speaking "as a citizen." Id. at 242 (citing Garcetti, 547 U.S. at 1960). In determining whether a public employee's speech addresses a matter of public concern, courts look to "the content, form, and context of a given statement, as revealed by the whole record." Id. (quoting Garcetti, 547 U.S. at 1960). "A public employee's statement involves a matter of public concern if it can be fairly considered as relating to any matter of political, social or other concern to the community." Muzslay v. City of Ocean City, 238 F. App'x 785, 789 (3d Cir. 2007) (citing Brennan v. Norton, 350 F.3d 399, 412 (3d Cir. 2003)). Accordingly, the Court begins by analyzing whether, as a matter of law, the conduct Yust alleges spawned retaliation was protected by the First Amendment.

### i. Yust's Opposition to Bourbeau's Waiver Request

Defendants maintain that Yust's opposition to Bourbeau's waiver request is not protected by the First Amendment because in speaking and voting on the matter, Yust acted as a public employee, not a private citizen. According to the Lifeguard Pension Plan document, the Commission administers the Plan. (Defs.' Mot. Summ. J. Ex. 4 at 6.) The mayor appoints the members to four-year terms, and the mayor can only remove members for good cause. Members take an oath of office but do not receive compensation for their services. (Id.) As an appointed member of the Commission, Yust's votes in opposition to Bourbeau's waiver request were pursuant to his official duties. He cannot claim that he acted as a private citizen in carrying out his actions on the Commission. Consequently, his votes against the waiver request were not protected by the First Amendment, and Defendants are entitled to summary judgment on Yust's

claims that his delayed start date in 2000 and the four promotions he was denied between 2000 and 2002 constituted First Amendment retaliation.

      ii.  *Yust's Speech In Favor of Extended Lifeguard Hours*

Defendants argue that Yust's claim that Longo and Mayor Knight retaliated against him for supporting Captain Muzslay's proposal to extend lifeguard hours must be dismissed. They assert that because Yust does not have any evidence that Longo or Knight knew of his feelings on the matter, the adverse employment actions could not have the requisite causal nexus to Yust's purportedly protected speech. Even apart from this question of causation, however, Defendants are entitled to summary judgment on this issue because Yust has not adduced any evidence that he was not acting in his role of OCBP Lieutenant when he spoke out about lifeguard hours but rather was acting as a private citizen. The Lieutenant position is an administrative one, which involves overseeing lifeguards and maintaining safety on Ocean City's beaches. Accordingly, Yust's support for Captain Muzslay's proposal to extend lifeguard hours is inseparable from his job duties with OCBP. See Muzslay, 238 F. App'x at 789 (noting Muzslay's advice to extend lifeguard hours was pursuant to his official duties).

  **C.**  **Due Process**

Yust's Complaint does not specify how his right to due process was allegedly violated. Defendants argue, however, that Yust lacked any property interest in his employment warranting due process protection and that, even assuming a protectable property interest, Yust failed to take advantage of the process available to him.

      i.  *Procedural Due Process*

To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff

10

must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of "life, liberty, or property," and (2) the procedures available to him did not provide due process of law. Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000). A public employee has a constitutionally cognizable property interest in his employment only where he can demonstrate a "legitimate claim of entitlement" to the position, typically established by state statute. Latessa v. N.J. Racing Comm'n, 113 F.3d 1313, 1318 (3d Cir. 1997) (citing Board of Regents of State Colleges v. Roth, 408 U.S. 564, 576 (1972)). In some instances, an expectation of employment may also arise from "'mutually explicit understandings' between a government employer and employee." Latessa, 113 F.3d at 1318 (quoting Stana v. Sch. Dist. of City of Pittsburgh, 775 F.2d 122, 126 (3d Cir. 1985)). An employee's unilateral expectation of future employment, however, does not give rise to a constitutionally protected property interest. See Perry v. Sindermann, 408 U.S. 593, 603 (1972); Roth, 408 U.S. at 577. To have a property interest in promotion to a particular position, the plaintiff must have more than an "abstract need" or a "unilateral expectation" to receive the advancement. Roth, 408 U.S. at 577. Rather, the plaintiff must show that he had "a legitimate claim of entitlement" to the promotion. Id.

     Yust has not alleged any facts suggesting he had such a claim to the Senior Lieutenant positions in 2000 and 2002 or the Chief of Operations position in 2001. As a result, the Court finds that he did not have a constitutionally protected property interest in obtaining those promotions, and the Court will grant Defendants summary judgment on Yust's procedural due process claim.

       *ii.*       *Substantive Due Process*

The Third Circuit held in <u>Nicholas v. Pennsylvania State University</u>, 227 F.3d 133 (3d Cir. 2000), tenured public employment is not a fundamental property interest entitled to substantive due process protection. <u>Id.</u> at 142. Therefore, Yust has failed to articulate a fundamental right on which Defendants infringed. The denial of promotions in 2000, 2001, and 2002 did not contravene any property rights guaranteed to him under the Constitution, and Defendants will be granted summary judgment on Yust's substantive due process claim.

**D.**      **Civil Rights Conspiracy**

Defendants contend that Yust has not set forth sufficient facts to make out a claim under 42 U.S.C. § 1985(3). Section 1985(3) permits an action to be brought by one injured by a conspiracy formed "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3). To prove a conspiracy to violate a plaintiff's civil rights in violation of § 1985(3), he must prove the existence of (1) a conspiracy motivated by invidious discriminatory animus, (2) for the purpose of depriving him, either directly or indirectly, of the equal protection of the laws, (3) that there was an act in furtherance of the conspiracy, and (4) that he was, as a result, injured in his person or deprived of any right or privilege of a citizen of the United States. <u>See</u> <u>Farber v. City of Paterson</u>, 440 F.3d 131, 134 (3d Cir. 2006).

Here, Defendants correctly point out that Yust has not alleged the requisite discriminatory animus to support his § 1985(3) claim. He has not alleged that Longo's and Knight's discrimination against him was due to a protected characteristic, and thus his claim fails. <u>See</u> <u>Davis v. Township of Hillside</u>, 190 F.3d 167, 171 (3d Cir. 1999) (finding § 1985(3) claims

properly dismissed where plaintiff did not allege that defendants colluded with the requisite "racial, or . . . otherwise class-based, invidiously discriminatory animus"). As such, the Court will award Defendants summary judgment on Yust's § 1985(3) claim.

      E.      **New Jersey Constitution**

Defendants also assert that Yust's state constitutional claim must fail. Unlike violations of the United States Constitution, which are actionable through § 1983, the New Jersey Constitution itself provides a remedy for violations of its provisions. Scully v. Borough of Hawthorne, 58 F. Supp. 2d 435, 459 (D.N.J. 1999). Yust alleges violations of the guarantees in the New Jersey Constitution at Article 1, Paragraph 1 to equal protection of the laws. Under this cause of action, Yust's complaint alleges loss of privacy, loss or reputation, and denial of due process. Yust has not provided any facts in his Complaint or elsewhere demonstrating how he experienced deprivation of privacy or loss of reputation. Moreover, he has cited no authority nor otherwise suggested that the analysis of his claim brought pursuant to the New Jersey Constitution for due process is any different than the analysis of that his federal due process claim. Therefore, Defendants are entitled to summary judgment on Yust's state constitutional claim, as well.

      F.      **CEPA**

Yust alleges that the adverse employment actions he suffered constituted retaliation in violation of CEPA, N.J.S.A. 34:19-2(e). Defendants seek summary judgment on Yust's CEPA claim only as it relates to adverse employment actions prior to 2000, namely his 1998 demotion, his 1999 denials of promotion to Senior Lieutenant, his PERC complaint filed June 4, 1999, and Longo's alleged withholding of keys and a parking permit during summer 1999. Defendants

argue that these actions cannot constitute retaliation because they occurred before the events that Yust alleges gave rise to the retaliation. Alternatively, Defendant's maintain that the portion of Yust's CEPA claim based on events during these three years must be dismissed for failure to file within CEPA's one-year statute of limitations.

CEPA was enacted to "protect employees who report illegal or unethical work-place activities." Barratt v. Cushman & Wakefield of N.J., Inc., 675 A.2d 1094, 1098 (1996). Significantly, a CEPA claim must be brought "within one year" of "the discharge, suspension or demotion of an employee, or other adverse employment action taken against an employee in the terms and conditions of employment." N.J. Stat. Ann. 34:19-5 and -2(e). The claim accrues on the date of the adverse employment action that constitutes the alleged retaliatory action. Villalobos v. Fava, 775 A.2d 700, 706 (N.J. Super. Ct. App. Div.), certif. denied, 785 A.2d 438 (2001). "[M]any separate but relatively minor instances of behavior directed against an employee that may not be actionable individually but that combine to make up a pattern of retaliatory conduct" can also constitute an adverse employment action. Green v. Jersey City Bd. of Educ., 828 A.2d 883, 891 (2003).

Yust did not file his lawsuit until June 28, 2002; therefore, his CEPA claims regarding incidents that occurred during 1997, 1998, and 1999 are clearly time-barred. His claims accrued at the time of his demotion and the denials of promotion. More minor instances of alleged retaliation, like the withholding of keys and a parking pass, could certainly contribute to actionable retaliation; however, here, this behavior occurred amid more significant adverse employment actions, which clearly triggered the statute of limitations. As a result, the Court will award Defendants summary judgment on Yust's CEPA claim to the extent he relies on events

that took place in 1997, 1998, and 1999.

All that remains of Yust's Complaint is his CEPA claim arising from events after 1999. Because Defendants are entitled to summary judgment on all of the federal claims asserted by Yust, the Court will decline to exercise supplemental jurisdiction over the remaining CEPA claim, and this case will be dismissed. See 28 U.S.C. § 1367(c)(3).

### IV. CONCLUSION

Based on the foregoing reasoning, the Court will grant Defendants' motion for partial summary judgment. In addition, the Court will dismiss the portion of Yust's CEPA claim that remains. An accompanying Order shall issue today.


Dated: 5/30/08                                                      s/ Robert B. Kugler
                                                           ROBERT B. KUGLER
                                                           United States District Judge